IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  06-cv-01187-WDM-KLM

JOHNNY J. QUINTANA,

      Plaintiff(s),

v.

CAPTAIN EDMOND, and
LT. MCCORMICK,

      Defendant(s).

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN  L. MIX**

      This matter is before the Court on Defendants' **Motion for Summary Judgment**
[Docket No. 84; filed January 14, 2008] (the "Motion").  Pursuant to 28 U.S.C. §
636(b)(1)(A) and D.C. COLO.L.Civ.R. 72.1.C., the matter has been referred to this Court
for recommendation.  The Court has reviewed the Motion, Plaintiff's Response [Docket No.
89; filed January 28, 2008], the entire case file, and the applicable law and is sufficiently
advised in the premises.  For the reasons set forth below, the Court respectfully
**RECOMMENDS** that the Motion be **GRANTED IN PART AND DENIED IN PART**.

**I.**     **Standard of Review**

      In ruling on a motion for summary judgment, the facts must be viewed in the light
most favorable to the party opposing the motion, and that party must be afforded the

1

benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). Fed. R. Civ. P. 56(c) provides that summary judgment may be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating, by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, the absence of genuine issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The party opposing the motion is then required to go beyond the pleadings and designate evidence of specific facts showing that there is a genuine issue for trial. *Id.* at 324. Only admissible evidence may be considered when ruling on a motion for summary judgment. *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

Finally, Plaintiff here is proceeding *pro se*. The Court must construe the motion liberally because Plaintiff is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the *pro se* litigant's advocate. *See Hall*, 935 F.2d at 1110. A court may not assume that a plaintiff can prove facts that have not been alleged, or that a

defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## II.    Statement of the Case

The following facts are essentially undisputed for the purposes of this Motion. Plaintiff filed his *pro se* Complaint on June 21, 2006, pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 1983 [Docket No. 3]. At the time of the incidents alleged in the Complaint, Plaintiff was incarcerated in the Buena Vista Correctional Facility ("BVCF"). *Motion* [#84] at 2. Plaintiff alleges that on or around December 2005, a BVCF nurse improperly re-used a syringe while administering a tuberculosis test to Plaintiff. *Motion* [#84] at 3. Plaintiff alleges that he filed grievances against the medical department in relation to this incident. *Id.* During his deposition, Plaintiff testified that he believed Defendants were aware of these grievances against the medical department. *Id.* Plaintiff filed a Step 1 grievance against Defendant Edmonds on March 13, 2006, alleging that Defendant Edmonds was retaliating against him in various ways based on Plaintiff's use of the grievance process. *Complaint* [#3] at 14. Plaintiff's Step 1 grievance was denied on March 21, 2006. *Id.* at 15. Plaintiff filed a Step 2 grievance related to his allegations of retaliation on April 7, 2006. *Id.* at 16. On May 2, 2006, Plaintiff received a reply from a BVCF official which stated, in part, "[i]t appears to date your relief has been granted." *Id.* at 17. Plaintiff filed his Step 3 grievance in relation to his allegations of retaliation on May 9, 2006. *Response* [#89] at 11. Plaintiff's Step 3 grievance was denied on January 11, 2007. *Id.* at 10.

Also during his incarceration at BVCF, Plaintiff engaged in Native American religious

practices. *Complaint* [#3] at 6. Colorado Department of Corrections ("CDOC") administrative regulations provide that inmates engaging in Native American religious practices may smoke limited quantities of tobacco during Native American sweat lodge services. *Motion* [#84] at 5. Prison officials required Plaintiff to undergo two tests[1] for tobacco use during his incarceration at BVCF. *Id.* The first tobacco test was administered to Plaintiff by Defendant Edmonds on April 8, 2006. *Complaint* [#3] at 6. The second tobacco test was administered to Plaintiff by Defendant Edmonds on April 20, 2006. *Id.* at 7. At the time of the tobacco tests, Plaintiff was informed that he would not be disciplined or subjected to negative consequences if and when the test results were returned positive for tobacco use. *Motion* [#84] at 6; *Response* [#89] at 16. Plaintiff was not disciplined or subject to negative consequences by prison officials as a result of the tobacco tests. *Id.*

On May 16, 2006, Defendant McCormick signed a Notice for Administrative Segregation Hearing, which set an administrative segregation hearing for Plaintiff on May 19, 2006. *Motion* [#84] Ex. A-3. This Notice stated, in part, that "[Plaintiff] has an extensive history of involvement in the illegal drug subculture . . . . Most recently in April 2006, this officer received confidential intelligence information that [Plaintiff] was selling marijuana at BVCF . . . . [Plaintiff's] continued placement at BVCF poses a serious threat to the security of this facility and to the safety of other staff and offenders." *Id.* After the administrative segregation hearing, which concluded on May 22, 2006, Plaintiff was classified as requiring

---

[1]Defendants assert that the test administered to Plaintiff was a "saliva swab" test. *Motion* [#84] at 5. Plaintiff asserts that, at least on one occasion at issue, he was given both a saliva swab test and a urine analysis test. *Response* [#89] at 5.

placement in administrative segregation. *Motion* [#84] at 4. The hearing officer's decision on Plaintiff's classification was apparently based "upon evidence Plaintiff had 'an extensive history of involvement in the drug subculture,' as well as a history of gang, or 'STG' membership." *Id.* Plaintiff's administrative segregation hearing resulted in his placement in administrative segregation and eventual transfer to the Colorado State Penitentiary ("CSP"). *Id.* After his transfer to the CSP, Plaintiff filed a case pursuant to C.R.C.P. 106(a)(4) in the District Court for Chaffee County, Colorado challenging his placement in administrative segregation ("Case No. 06-cv-79"). *Id.* On January 3, 2008, the Chaffee District Court affirmed the decision to place Plaintiff in administrative segregation. *Id.*

In this case, Defendants filed a Motion to Dismiss in Part on October 10, 2006 [Docket No. 16]. By Recommendation dated May 18, 2007, Magistrate Judge O. Edward Schlatter recommended dismissal of Plaintiff's First Amendment free exercise claim and dismissal of Plaintiff's claims for damages brought against Defendants in their official capacities [Docket No. 51 at 6]. By Order dated August 9, 2007, District Judge Walker D. Miller accepted Magistrate Judge Schlatter's Recommendation in part, declining to dismiss Plaintiff's First Amendment claim based upon his finding that Plaintiff's allegations could sufficiently demonstrate a violation of Plaintiff's equal protection rights based upon his status as a Native American or because of his religion [Docket No. 60 at 3]. As such, District Judge Miller dismissed all claims against Defendants in their official capacities as well as Plaintiff's claims of harassment. Accordingly, Plaintiff has two remaining claims: Claim One for retaliation and Claim Two for violation of his equal protection rights. Plaintiff

requests injunctive, compensatory and punitive relief. *Complaint* [#3] at 18.

## III. Analysis

This action is brought pursuant to 42 U.S.C. § 1983, which provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit at equity, or other proper proceeding for redress.

### A. Claim One - Retaliation

Plaintiff asserts that Defendants retaliated against him for filing administrative grievances and because of his Native American religious practices.

#### i. Favorable Termination Requirement

Defendants first argue that Plaintiff's retaliation claim is barred due to Plaintiff's failure to obtain a favorable termination of his administrative segregation classification. *Motion* [#84] at 8. Defendants contend that "[a] person cannot bring a § 1983 action based on an alleged invalid conviction or sentence unless the conviction or sentence has previously been invalidated . . . ." *Id.* at 9 (citing *Heck v. Humphrey*, 512 U.S. 477, 487 (1994)). Defendants argue that prior to bringing this action, Plaintiff must first obtain a favorable termination of his administrative segregation classification, as "Plaintiff's classification impacts the earned time credit that he is eligible to receive, which affects the duration of his confinement." *Id.* at 11.

*Heck v. Humphrey* involved a § 1983 claim arising out of alleged unlawful acts by state prosecutors and police officers which led to the plaintiff's arrest and ultimate

6

conviction.  512 U.S. 477.  In *Heck*, the Supreme Court held that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id.* at 487.  If so, the court must dismiss the complaint "unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated."  *Id.*  The Supreme Court's holding in *Heck* has also been applied to prison disciplinary convictions that deprive a prisoner of good time credits.  *See Edwards v. Balisok*, 520 U.S. 641 (1997).  However, only claims which "necessarily implicate the fact or duration of" a prisoner's confinement are barred; claims that relate solely to a prisoner's "conditions of incarceration" are not subject to *Heck's* favorable termination requirement.  *Torres v. Fauver*, 292 F.3d 141, 145 (3rd Cir. 2002).  That is, the "assumption is that the incarceration that matters under *Heck* is the incarceration ordered by the original judgment of conviction, not special disciplinary confinement for infraction of prison rules."  *Muhammad v. Close*, 540 U.S. 749, 752 n.1 (2004).  Other courts have found that "if a favorable determination would not automatically entitle the prisoner to accelerated release, the proper vehicle for suit is § 1983.  If it would so entitle him, he must first get a habeas judgment."  *Clarke v. Stalder*, 121 F.3d 222, 226 (5th Cir. 1997), *distinguished on other grounds by Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 863 (5th Cir. 2004).

Accordingly, the preliminary issue before the Court is whether a favorable determination on Plaintiff's retaliation claim would "automatically entitle [him] to accelerated release . . . ."  *Id.*  Defendants contend that Plaintiff's administrative segregation

classification affects the earned time credit he is eligible to receive, which they allege necessarily affects the duration of his confinement. *Motion* [#84] at 11. Defendants argue that, pursuant to CDOC's Administrative Regulations, inmates who are classified and placed in maximum administrative regulation are not eligible for earned time credits "until a month after they are classified at a level below administrative segregation." *Id.* (citing Administrative Regulation 550-12 (IV)(F)(I)).[2] Earned time credit is given to prisoners who "demonstrate substantial and consistent progress in categories such as work and training, group living, participation in counseling and group sessions, education programs, and progress towards goals and programs established by the CDOC's diagnostic programs." *Id.* (citing Colo. Rev. Stat. § 17-22.5-302(a) and (2)). Defendants argue that earned time credit operates to reduce the term for which an inmate is incarcerated. *Id.* (citations omitted).

In *Muhammad v. Close*, the Supreme Court found that "administrative determinations do not as such raise any implication about the validity of the underlying conviction, and although they may affect the duration of time to be served (by bearing on the award or revocation of good-time credits) *that is not necessarily so.*" 540 U.S. at 754 (emphasis provided). In *Muhammad*, the Supreme Court also noted that the Magistrate Judge deciding the case had "expressly found or assumed that no good-time credits were eliminated by the prehearing action [the plaintiff] called into question," and, as such, the

---

[2]The Court may take judicial notice of agency rules and regulations. *See Ray v. Aztec Well Servs. Co.*, 748 F.2d 888, 889 (10th Cir. 1984).

plaintiff's "§ 1983 suit challenging [the] action could not therefore be construed as seeking a judgment at odds with his conviction or with the State's calculation of time to be served in accordance with the underlying sentence." 540 U.S. at 754-55.

Like the case in *Muhammad*, the Court has reviewed the documents submitted by the parties and finds that there is no evidence that any good time or earned time credits were actually eliminated by Plaintiff's classification to administrative segregation. That is, while Plaintiff may have lost the potential to receive earned time credits, the Court notes that this is merely a theoretical, and not an actual, loss. According to the definition of earned time credits provided by Defendants, these credits appear to be awarded on a discretionary basis related to the prisoner's participation in certain programs and for demonstrating certain behaviors. Therefore, while Plaintiff *might have* received earned time credits were he not in administrative segregation, there certainly seems to be no guarantee that he would necessarily have done so. Moreover, Defendants rely on *Fistell v. Neet*, where the Tenth Circuit held that a prisoner who sought restoration of earned time credits was attempting to "implicitly question . . . the duration of [his] sentence." 125 Fed. Appx. 219, 225 (10th Cir. Feb. 22, 2005) (unpublished decision) (citations omitted). However, the Court notes that in *Fistell*, the prisoner had suffered the actual loss of earned time credits and was seeking to restore them. *Id.* In the instant case, there is no allegation that Plaintiff has actually been deprived of any earned time credit, only that he has lost the theoretical potential to earn these credits. Therefore, "a favorable determination would not automatically entitle the prisoner to accelerated release," and Plaintiff's § 1983 claim may

properly proceed. *Clarke*, 121 F.3d at 226. Accordingly, the Court declines to grant summary judgment to Defendants on these grounds, and will instead proceed to the merits of Plaintiff's retaliation claim.

### ii. Lack of Retaliatory Motive

Plaintiff asserts that Defendants retaliated against him in various ways for filing administrative grievances and because of his Native American religious practices. *Complaint* [#3] at 11. Defendants argue that Plaintiff has not shown that "but for the retaliatory motive, the incidents to which he refers would not have taken place." *Motion* [#84] at 13 (citing *Smith v. Maschner*, 899 F.2d 940, 949-50 (10th Cir. 1990)).

Plaintiff alleges that from late 2005 until the time of filing, Defendants Edmond and McCormick have retaliated against him for his filing of grievances against them. *Complaint* [#3] at 4. Specifically, Plaintiff alleges that Defendant Edmond, on orders from Defendant McCormick, or with his approval, required Plaintiff to submit to repeated urine analysis tests ("UAs"); called Plaintiff a "liar" within the hearing of other inmates; attempted to have Plaintiff removed from his prison job as a dog trainer by falsely telling Plaintiff's supervisor that he had positive UAs and that he had been involved in an altercation with the Native American religious coordinator; placed Plaintiff on thirty days probation; and filed unspecified false disciplinary charges against Plaintiff which resulted in his placement in administrative segregation. *Id.* at 3-11.

"[I]n order to establish a First Amendment retaliation claim, a prisoner must demonstrate that he was (1) engaged in protected conduct; (2) that he suffered an adverse

action; and (3) that a causal connection exists between the protected conduct and the adverse action." *Baldauf v. Hyatt*, 2008 WL 280839 at *7 (D. Colo. 2008) (unpublished decision) (citing *Scott v. Churchill*, 377 F.3d 565, 569 (6th Cir. 2004)). Moreover, "[p]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his rights to access the courts." *Smith,* 899 F.2d at 947. "This principle applies even if the action taken in retaliation would be otherwise permissible." *Id.* at 948. However, an inmate is not "inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because he is engaged in protected activity." *Peterson v. Shanks,* 149 F.3d 1140,1144 (10th Cir.1998).

The first element of Plaintiff's claim requires that he show he was engaged in protected conduct. *Baldauf*, 2008 WL 280839, at *7. The filing of formal prisoner grievances falls under the conduct protected by the First Amendment and thus is actionable under § 1983. *See, e.g., Colon v. Coughlin*, 58 F.3d 865, 872 (2nd Cir. 1995) (holding that prison officials may not retaliate against prisoners for petitioning for redress of grievances). Accordingly, Plaintiff's allegations that he was subjected to retaliatory conduct for filing staff misconduct grievances satisfies the first element of his retaliation claim.

The second element of Plaintiff's claim requires that he show he was subject to an adverse action. *Baldauf*, 2008 WL 280839, at *7. Plaintiff was classified as requiring placement in administrative segregation on May 22, 2006, which resulted in his eventual placement in administrative segregation. *Motion* [#84] at 4. Accordingly, Plaintiff has satisfied the second element of his First Amendment retaliation claim. *See Montoya v. Bd.*

*of County Comm'rs*, 506 F. Supp. 2d 434, 448 (D.Colo. 2007) (finding that placement in segregation for several months was an adverse action).

The third element of Plaintiff's claim requires that he show that "a causal connection" exists between his conduct and the adverse action. *Baldauf*, 2008 WL 280839, at *7. To prevail on the causation element of a claim for retaliation, a plaintiff "must prove that 'but for' the retaliatory motive, the incidents to which he refers . . . would not have taken place." *Peterson*, 149 F.3d at 1144 (citing *Smith*, 899 F.2d at 949-50); *see also Brown v. Crowley*, 312 F.3d 782, 790 (6th Cir. 2002) (finding that the third element of a retaliation claim "is satisfied where the adverse action was motivated at least in part by the plaintiff's protected conduct." (internal quotation marks and citation omitted)). "An inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Peterson*, 149 F.3d at 1144. (quotations and citation omitted) (emphasis in original). That is, "it is imperative that [a] plaintiff's pleading be factual and not conclusory. Mere allegations of constitutional retaliation will not suffice; plaintiffs must rather allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Frazier v. Dubois*, 922 F.2d 560, 562 n.1 (10th Cir. 1990); *see also Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) ("[T]he inmate must allege more than his personal belief that he is the victim of retaliation.").

In attempting to prove the causal connection between the conduct and the adverse action suffered, the prisoner must "allege a chronology of events from which retaliation may plausibly be inferred." *Jones*, 188 F.3d at 325 (citations omitted). The presentation of

circumstantial evidence such as temporal proximity, a chronology of events, or suspicious timing may be sufficient to support allegations of retaliation. *See Smith,* 899 F.2d at 949 (holding that the inmate sufficiently supported retaliation claim with "only means available to him -- circumstantial evidence of the suspicious timing of his discipline, coincidental transfers of his witnesses and assistants"); *Harris v. Fleming,* 839 F.2d 1232, 1236-38 (7th Cir.1988) (finding that the pattern and timing of firings and cell transfers were sufficient to establish a question of retaliation); *McDonald v. Hall,* 610 F.2d 16, 18 (1st Cir. 1979) (holding that the plaintiff's allegations of a "chronology of events" may be read as "providing some support for an inference of retaliation"). In a retaliation claim, an inference of retaliatory motive may be undermined by a long delay between the protected activity and the challenged conduct. *Deschenie v. Bd. of Educ. of Cent. Consol. Sch. Dist. No. 22*, 473 F.3d 1271, 1278 (10th Cir. 2007) (internal quotation marks and citation omitted).

Accordingly, the Court first looks to the chronology of events that Plaintiff has alleged in this case.[3] Plaintiff's Step 1 grievance in relation to the alleged harassment by Defendants was filed March 13, 2006. *Complaint* [#3] at 14. Plaintiff's Step 2 grievance

---

[3]In examining the chronology of events, the Court notes that Plaintiff has also alleged that on or around December 2005, a BVCF nurse improperly re-used a syringe while administering a tuberculosis test to Plaintiff and that he filed grievances against the medical department in relation to this incident. *Motion* [#84] at 3. However, these grievances have not been attached to Plaintiff's Complaint and neither party has provided them to the Court nor made the contents of these grievances clear. Accordingly, although both parties appear to make certain arguments in regards to these grievances, the Court has not considered them. For the purposes of Plaintiff's retaliation claim, the Court believes that the relevant series of grievances are the grievances attached by Plaintiff to his Complaint that directly concern Defendants.

regarding Defendants was filed on April 7, 2006. *Id.* at 16. Plaintiff filed his Step 3 grievance in relation to his allegations of retaliation on May 9, 2006. *Response* [#89] at 11. On May 16, 2006, Defendant McCormick signed Plaintiff's Notice for Administrative Segregation Hearing, which set an administrative segregation hearing for May 19, 2006. *Motion* [#84] Ex. A-3. Plaintiff was classified as requiring placement in administrative segregation after a hearing completed on May 22, 2006. *Motion* [#84] at 4. Therefore, a little over two months after Plaintiff first initiated use of the grievance system against Defendants, he suffered the adverse action of placement in administrative segregation. The Court finds that Plaintiff has sufficiently "allege[d] a chronology of events from which retaliation may plausibly be inferred." *Jones*, 188 F.3d at 325 (citations omitted); *see also Ramirez v. Okla. Dep't of Mental Health*, 41 F.3d 584, 596 (10th Cir. 1994) (concluding that a one and one-half month period between protected activity and a negative action may establish causation).

However, Defendants argue that Plaintiff cannot prove that Defendants knew about his grievances such that they could retaliate against him on this basis. Defendants contend that Plaintiff has admitted that "he did not give either Defendant any copies of the grievances that he filed concerning [them], and they did not respond to the grievances that he filed. [During his deposition] Plaintiff also testified that he never discussed the incident or his grievances concerning the incident with either of the Defendants." *Motion* [#84] at 15.

In Plaintiff's Response, he agrees that he never personally gave any grievances to Defendants. *Response* [#89] at 3. However, he states that he "inform[ed] [Defendant]

Edmond that [Plaintiff] would be filing grievances." *Id.* He further states that Defendant "Edmond over see's [sic] all operations in the [BVCF] and is informed during rool [sic] call of all incidences [sic] that take place in the [BVCF]." *Id.* Moreover, in Plaintiff's April 2, 2007 deposition, while discussing whether Defendants were aware of his grievances, he stated "I know they knew about them . . . . [Defendant Edmond] runs the facility, he's the main one that handles everything . . . . if you have a disagreement with any officer . . . he is to be informed of what has taken place." *Motion* [#84] Ex. A-1 at 104: l. 17-25; 105: l. 1-4. Plaintiff then stated that it was his belief that it was in the facility rules that Defendant Edmond be informed of incidents and grievances. *Id.* at 105: l. 11-18.

Moreover, Plaintiff has provided additional evidence in the form of properly sworn and notarized affidavits from other prisoners.[4] In a Declaration sworn by Virgil L. Anderson, he

---

[4] In Plaintiff's Declaration, sworn under the penalty of perjury, Plaintiff states: "At the end of April 2005 Officer Ward called [Plaintiff] to the gym and informed [Plaintiff] that he over heard [Defendant] Edmond state he was out to get [Plaintiff] and have [Plaintiff] taken out of the facility and placed in segregation." *Response* [#89] at 16. Federal Rule of Evidence 801(c) defines hearsay as an out-of-court statement "offered in evidence to prove the truth of the matter asserted," and Rule 802 states that "hearsay is not admissible except as provided by these rules . . . ." Fed. R. Evid. 801(c), 802. Further, Rule 801(d)(2) provides in relevant part that a statement is "not hearsay" if it is "offered against a party and is (A) the party's own statement, in either an individual or representative capacity; . . . or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Fed. R. Evid. 801(d)(2)(A) - (D). However, as these are suits against Defendants in their individual capacities, and not against the CDOC, and as there is no evidence that "Officer Ward" is an agent or servant of Defendants, I find that this alleged statement by "Officer Ward" does not fall within the above-cited category of "party admissions" that are "not hearsay." As Plaintiff makes no additional argument supporting the admissibility of this statement, and because it is clearly offered for the truth fo the matter asserted - i.e., that Defendant Edmond was retaliating against Plaintiff - I find that this statement is inadmissible hearsay and not sufficient to create a

states that "[a]fter [Plaintiff] filed the Step One grievance on [Defendant] Edmond, the harassment got worse. [Defendant] Edmond would [urine test Plaintiff] continuously . . . ." *Response* [#89] Ex. D. In a Declaration sworn by Manuel Rubio, he states that "I seen [sic] on numerous occasions [Defendant] Edmond single out [Plaintiff] for no reason whatsoever and harass him . . . ." *Response* [#89] Ex. E. These sworn statements from other prisoners, taken in consideration with the chronology established by Plaintiff, create a genuine issue of fact as to whether or not "but for the retaliatory motive, the incidents to which he refers . . . would not have taken place." *Peterson,* 149 F.3d at 1144; *compare Custard v. Young*, 2008 WL 791954, *8 (D.Colo. 2008) (granting summary judgment on a claim for retaliation where it was "based on nothing more than his personal belief and conclusory allegations," and where no chronology of events was set forth). Indeed, "[w]here defendants' motives are seriously at issue, trial by affidavit is particularly inappropriate." *Smith*, 899 F.2d at 949.

Viewing the record in the light most favorable to Plaintiff, the Court finds that he has set forth sufficient evidence to support an inference that Defendants took disciplinary action against him based at least in part on improper motives. Accordingly, summary judgment is inappropriate on this claim and I respectfully **RECOMMEND** that Defendants' Motion for Summary Judgment be **DENIED** with respect to Plaintiff's First Claim for Relief.

### B. Claim Two - Equal Protection

Plaintiff's Second Claim for Relief alleges that Defendants required him to submit to UAs to help prison staff establish a "baseline" positive test for tobacco use among inmates

---

genuine issue of material fact.

for whom tobacco use was prohibited.  *Complaint* [#3] at 12.  Plaintiff asserts that the tests

were contrary to CDOC regulations which provide for random urine analysis testing for

inmates who have been allowed outside the facility.  District Judge Miller has interpreted this

Claim for Relief as alleging a violation of Plaintiff's equal protection rights pursuant to the

Fourteenth Amendment based on either his status as a Native American or because of his

religion.  *Order* [#60] at 3.

> ### i.    Failure to Exhaust

Defendants first argue that Plaintiff's claim for violation of his equal protection rights

is barred by Plaintiff's failure to exhaust his administrative remedies.  *Motion* [#84] at 15.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, requires that a claim

regarding prison conditions must first be exhausted at the facility level before a prisoner may

challenge those conditions in federal court.  Specifically, the exhaustion provision provides:

> No action shall be brought with respect to prison conditions under [42 U.S.C.
> § 1983], or any other Federal law, by a prisoner confined in any jail, prison,
> or other correctional facility until such administrative remedies as are
> available are exhausted.

42 U.S.C. § 1997e(a).  "There is no question that exhaustion is mandatory under the PLRA

and that unexhausted claims cannot be brought in court."  *Jones v. Bock*, 549 U.S. 199

(2007); *Woodford v. Ngo*, 548 U.S. 81, ___, 126 S. Ct. 2378, 2382 (2006) ("Exhaustion is

no longer left to the discretion of the district court, but is mandatory.").  However, the

burden is not on the Plaintiff to sufficiently plead exhaustion or attach exhibits proving

exhaustion.  *Jones*, 127 S. Ct. at 921.  Rather, the burden is on Defendants to assert a

failure to exhaust in their dispositive motion.  The failure to exhaust defense is generally

viewed as an allegation that the complaint fails to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), see *id.* at 920-21, but the Court analyzes the issue here pursuant to Fed. R. Civ. P. 56. As such, if the evidence presented does not create a genuine issue in Plaintiff's favor as to whether the claim was properly exhausted, Plaintiff's Second Claim for Relief *must* be dismissed.

As a preliminary matter, the facility is tasked with the responsibility of establishing grievance procedures. *Jones*, 127 S. Ct., at 923 ("[I]t is the prison's requirements, not the PLRA, that define the boundaries of proper exhaustion."). "Compliance with prison grievance procedures, therefore, is all that is required by PLRA to 'properly exhaust.'" *Baldauf v. Garoutte*, 2007 WL 2697445, at *4 (D. Colo. Sept. 11, 2007) (unpublished decision) (citation omitted). Here, the CDOC grievance procedures and methods for tracking filed grievances are set forth in Administrative Regulation 850-04 ("AR 850-04").[5] *Motion* [#84] Ex. A-8. AR 850-04 requires that inmates first attempt to resolve any issue by filing a Step 1 grievance form. *Id.* at 5. If the inmate is not satisfied with the remedy provided after the Step 1 grievance, he must then file a Step 2 grievance and likewise for a Step 3 grievance. *Id.* The Step 3 grievance is the final step in the CDOC grievance process. Once the inmate has received a response to his Step 3 grievance, he has exhausted his administrative remedies. *Id.* at 6.

Plaintiff disputes that he has failed to exhaust his administrative remedies. *See*

---

[5]The Court may take judicial notice CDOC's administrative process. *Ray*, 748 F.2d at 889.

*Response* [#89] at 7 ("Plaintiff states that he has exhausted his administrative remedies. See: Attachement [sic] A . . . it states the requirements about retaliation and urine testing"). Plaintiff cites to Exhibit A of his Response, a letter from the grievance officer to Plaintiff, dated January 11, 2007. *Id.* Ex. A. This letter states: "I have reviewed your Step 3 grievance that you filed with regard to staff conduct. In reviewing this matter I can find no evidence to support your allegation of harassment or retaliation by DOC staff . . . . Your request for relief is denied. This is the final administrative response in this matter and you have exhausted your administrative remedies." *Id.* The grievances filed by Plaintiff demonstrate that Plaintiff has exhausted his administrative remedies with regard to his claim that Defendants retaliated against him for use of the grievance process, and perhaps for exercise of his Native American religion. Indeed, Defendants do not dispute that Plaintiff has exhausted his administrative remedies with regard to his retaliation claim. However, the issue before the Court at this point is whether Plaintiff has exhausted his administrative remedies with regard to his Second Claim for Relief – his equal protection claim related to the tests administered on April 8, 2006 and April 20, 2006. *Complaint* [#3] at 12.

The Step 1 grievance submitted by Plaintiff in reference to the alleged retaliation by Defendants was provided the grievance number "BM05/06-473." *Response* [#89] at p. 14. Plaintiff's Step 1 grievance is dated March 13, 2006. *Id.* Therefore, this grievance, and the related Step 2 and Step 3 grievances, also labeled "BM05/06-473," could not have been submitted by Plaintiff in relation to the tobacco tests that were administered one month later

in April 2006.  Moreover, in Plaintiff's deposition, he explained that there were two series of grievances.  He stated that he filed the first set of grievances in relation to the alleged retaliation Plaintiff believed he was experiencing from Defendants.  *Motion* [#84]  Ex. A-1 at p. 130-32.  The second set of grievances were filed in relation to the "tobacco issue," as Plaintiff identifies it in his deposition, and Plaintiff states that he began the process of filing these grievances after the first time that Defendant tested him for tobacco.  *Id.* Ex. A at p. 133: l. 5-10.

During Plaintiff's April 2, 2007 deposition, he stated that he filled out, but failed to file a Step 2 grievance with regard to the tobacco testing, as he was taken to administrative segregation prior to filing the Step 2 grievance.  *Id.* Ex. A-1, p. 130: l. 11-35; p. 131: l. 1-14; p. 133: l. 5-21.  During Plaintiff's deposition, he stated:

> when [Defendant Edmond] started UA'ing me for tobacco, and the second time they did it, they also swabbed me the same day, that's when I went upstairs and got the grievance – before they swabbed me, I went upstairs and got the second grievance and was in the process of filing that.  And it was the weekend so I wasn't able to get it done.  I got it done by the end of the weekend, and Monday I was going to turn it in, and ended up getting put in segregation, so I was never able to turn that one in.

*Id.* Ex. A-1, p. 133: l. 5-15.

Plaintiff then stated that he never filled out a Step 3 grievance on the issue of the tobacco tests.  *Id.* Ex. A-1, p. 133: l. 18-25; p. 134: l. 1-14.  Plaintiff expressly agreed during his deposition that he never went beyond filing a Step 1 grievance on the issue of his tobacco testing.  *Id.* at l. 6-14.

The Court finds that Plaintiff has failed to exhaust his administrative remedies with

regard to the tobacco tests administered to him by prison officials. Despite Plaintiff's unsupported contentions, there appears to be no dispute that the grievance was not exhausted because Plaintiff did not follow the facility's grievance policy and complete the necessary grievance steps. The Tenth Circuit has found that an inmate must appeal his grievance through all available channels to fully exhaust his alleged injuries. *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) ("An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies."). While there is a recognized exception to the requirement to exhaust when procedures are not available – e.g, when an inmate has been prevented from filing a grievance or the facility refused to answer a grievance – the circumstances in this case do not appear to fall within this exception. *See id.* That is, other than Plaintiff's ambiguous and unsupported deposition testimony that he was not "able" to turn in his Step 2 grievance, there is no evidence before this Court that Plaintiff requested, and was denied, another Step 2 grievance or that the facility hindered his use of the grievance process. The record before this Court does not support the application of any exceptions to the requirement that Plaintiff must fully exhaust his claims. *See, e.g., Baldauf*, 2007 WL 2697445, at *8 (finding that vague and unsupported allegations that prison officials prevented the plaintiff from exhausting his claims were insufficient to prevent dismissal of the unexhausted claims).

Further, it appears that Plaintiff is well-versed in the facility's grievance procedure, as he exhausted his administrative remedies with regard to his first claim for relief. Plaintiff

21

acknowledged that after his Step 2 tobacco grievance had been taken from him while he was in administrative segregation, he did not request or attempt to file a new Step 2 grievance form. *See Motion* [#84] Ex. A-1 at p. 134: l. 6-14. At the point when Plaintiff realized that the Step 2 grievance related to the tobacco testing was taken, he should have and could have re-filed his grievance. Plaintiff's failure to pursue a response to his grievance is significant because one of the purposes of the PLRA is to provide the facility a chance to resolve the alleged injury prior to Court involvement. *See Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). If the Court were to consider Plaintiff's equal protection claim based on the mere submission of a Step 1 grievance, the PLRA's purpose and mandatory nature would be "trivialized." *See Jernigan*, 304 F.3d at 1033. Accordingly, there is no genuine issue of material fact regarding whether Plaintiff fully exhausted his administrative remedies, and summary judgment should be granted in favor of Defendants. Accordingly, I respectfully **RECOMMEND** that Defendants' Motion for Summary Judgment be **GRANTED** with respect to Plaintiff's Second Claim for Relief.

## IV. Conclusion

As set forth above, I respectfully **RECOMMEND** that Defendants' Motion for Summary Judgment [Docket No. 84; Filed January 14, 2008] be **GRANTED IN PART AND DENIED IN PART**. I **RECOMMEND** that summary judgment be **DENIED** on Plaintiff's retaliation claim, and that summary judgment be **GRANTED** on Plaintiff's equal protection claim.

FURTHER, IT IS **ORDERED** that pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R.

Civ. P. 72(b), the parties have ten (10) days after service of this Recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the Recommendation by the district judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *In re Key Energy Resources Inc.*, 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this Recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1060 (10th Cir. 1996).

BY THE COURT:
__s/ Kristen L. Mix_____
United States Magistrate Judge

Dated: July 18, 2008