IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Walker D. Miller

Civil Action No. 06-cv-01187-WDM-KLM

JOHNNY J. QUINTANA,

    Plaintiff,

v.

CAPTAIN EDMOND and
LT. MCCORMICK,

    Defendants.

**ORDER ON RECOMMENDATION OF MAGISTRATE JUDGE**

Miller, J.

This case is before me on the recommendation of Magistrate Judge Kristen L. Mix (doc no 112) that Defendants' Motion for Summary Judgment (doc no 84) be granted in part and denied in part. Plaintiff and Defendants filed objections to the portions of the recommendation unfavorable to them and therefore are entitled to *de novo* review. 28 U.S.C. § 636(b). For the reasons set forth below, I accept Magistrate Judge Mix's recommendation.

I have reviewed the pertinent portions of the record in this case, including the complaint, the motion for summary judgment and Plaintiff's response, the recommendation, and the parties' objections. After my order (doc no 60) partially granting Defendants' previously filed motion to dismiss, two claims remained pending: (1) a claim that Defendants retaliated against Plaintiff for his exercise of his First Amendment right to file grievances (or, alternatively, for his exercise of his religion); and (2) a claim for denial of

equal protection for alleged disparate treatment with respect to drug testing of persons who engaged in Native American religious practices.

Plaintiff was incarcerated at the Buena Vista Correctional Facility ("BVCF") from 2003 to 2006. The relevant history of Plaintiff's grievances is as follows: Plaintiff alleges that around December 2005, a BVCF nurse improperly reused a syringe while administering a tuberculosis test to Plaintiff. Plaintiff filed grievances about the issue. He alleges that after he began filing grievances against the medical department, Defendant Edmonds began to retaliate against him. Plaintiff alleges that Edmonds began subjecting Plaintiff to an unusual number of urinalysis tests, specifically on December 7, 2005 and January 5, 2006. Plaintiff contends that Edmonds further retaliated against him by calling him a liar in front of other inmates. In February 2006, Edmonds allegedly then falsely told Plaintiff's supervisor at the dog training program that one of Plaintiff's urinalysis tests was positive; as a result, Plaintiff was put on 30-days probation. Edmonds allegedly also told Plaintiff's supervisor that Plaintiff had been involved in an altercation, which was also untrue. Plaintiff filed a Step 1 grievance on March 13, 2006, stating that Edmonds was retaliating against him because of Plaintiff's earlier grievances against the medical department. The Step 1 grievance was denied in March 21, 2006. Plaintiff filed a Step 2 grievance on April 7, 2006 asserting that Edmonds was in violation of several regulations by falsely stating that Plaintiff had a positive urinalysis; Plaintiff also alleged that the officer who denied the Step 1 grievance was covering for Edmonds.

On April 28, 2006, Edmonds filed a report in which he asserted that a confidential informant had told prison authorities that Plaintiff, in his capacity as a member or leader of a prison gang ("Threat Security Group" or "TSG"), had been ordered to carry out a "hit"

against another prisoner. On May 1, 2006, Plaintiff was placed in segregation pending investigation. He filed a Step 3 grievance on May 9, 2006 asserting that his placement was retaliatory and resulted from a personal vendetta by Edmonds; the grievance also asserts complaints against Defendant McCormac[1] for the first time, claiming that McCormac was covering for and condoning the retaliation by Edmonds. On May 16, 2006, McCormac signed a Notice for Administrative Segregation Hearing, which alleged that Plaintiff was segregated for involvement in drug activity as well as the ordered "hit." A hearing was set for May 19, 2006. After the hearing, Plaintiff was classified as requiring placement in administrative segregation based on confidential information which indicated that he had taken a leadership role in a STG, had been involved in the sale of illicit drugs as recently as April 2006, and that he was currently active in the STG. Defendants have provided under seal some or all of the confidential materials relied upon by the hearing officer in making this determination. Plaintiff appealed the decision to the District Court for Chaffee County, Colorado pursuant to C.R.C.P. 106; the District Court upheld the placement decision. Plaintiff is continuing the appeals process.

With respect to his equal protection claim (and his alternative retaliation theory), Plaintiff alleges that he engaged in Native American religious practices while at BVCF and was permitted by regulation to smoke a limited quantity of tobacco during certain services. Plaintiff alleges that Defendant Edmonds required him to undergo two tests for tobacco use in April 2006.[2] According to Edmonds, the facility had received new testing kits and he was

---

[1]This appears to be the correct spelling of this defendant's name.

[2]There is a dispute about whether these were urine tests or swab tests.

3

uncertain of what a positive result would look like; accordingly, he required Plaintiff and others returning from sweat lodge services to undergo the test in order to obtain positive test results to use as a baseline. Plaintiff was told at the time that a positive result would not result in discipline or other adverse consequences unless he refused to cooperate. Indeed, Plaintiff alleges no harm other than being subjected to the tests.

Defendants filed a motion for summary judgment asserting that Plaintiff's retaliation charge is barred because he did not obtain a favorable termination of his administrative segregation claim, citing *Heck v. Humphrey*, 512 U.S. 477 (1994). They also argued in the alternative that Plaintiff cannot show a causal connection between his grievances and the alleged adverse actions taken against him. Finally, they argued that Plaintiff's equal protection claim should be dismissed because he failed to exhaust his administrative remedies. Magistrate Judge Mix analyzes the *Heck* argument and recommends that this argument be rejected because a favorable determination will not invalidate Plaintiff's conviction or sentence. Defendants do not object to this portion of the recommendation and I agree with Magistrate Judge Mix's conclusion in this regard. Magistrate Judge Mix recommends that summary judgment be denied on Plaintiff's retaliation claim because he has alleged sufficient facts for a reasonable jury to infer that the institution of segregation proceedings was causally related to Plaintiff's previously-filed grievances. Defendants object to this portion of the recommendation. Finally, she recommends that summary judgment enter against Plaintiff on the equal protection claim because it is undisputed he did not file administrative grievances regarding the alleged unequal treatment. Plaintiff filed an objection relating to this portion of the recommendation.

Standard of Review

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying 'a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.'" *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)). Then, "[t]o avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Id.*

Discussion

1. Retaliation

Access to courts is a fundamental right protected by the Constitution, including the First Amendment right to petition the government for redress of grievances. *Nordgren v. Milliken*, 762 F.2d 851, 853 (10th Cir. 1985). "Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts." *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990). "This principle applies even where the action taken in retaliation would be otherwise permissible." *Id.* at 948. However, a prisoner is "not inoculated from the normal conditions of confinement experienced by convicted felons serving time in prisons merely because he has engaged in protected activity." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998). Accordingly, a plaintiff

5

must allege "specific facts showing retaliation because of the exercise of the prisoner's constitutional rights"–i.e., the plaintiff must prove that "but for" the retaliatory motive, the adverse response would not have taken place.  *Id.* (citations omitted).

Magistrate Judge Mix concluded that Plaintiff's facts demonstrate that he engaged in protected speech and that he had suffered an adverse action, specifically placement in administrative segregation.  Magistrate Judge Mix determined that Plaintiff could show a causal connection between his conduct and the adverse action because of the relatively close temporal proximity between his grievances and the Notice for Administrative Segregation hearing.  In addition, Plaintiff proffers some evidence that Defendant Edmonds and McCormac knew of the grievances because Plaintiff informed them that Plaintiff would file grievances and that Defendant Edmonds runs the facility and is informed of grievances. Plaintiff also presents evidence from other inmates in the form of affidavits in which they assert that Edmonds singled out Plaintiff for harassment.

In their objections, Defendants assert that Plaintiff's evidence does not demonstrate that "but for" the retaliatory motive, he would not have been placed in administrative segregation.  In support of this argument, Defendants proffer the confidential reports, under seal, which showed that Plaintiff was involved in STG and drug activities.  Citing case law from other jurisdictions, Defendants argue that because there was "some evidence" to support the classification decision, Plaintiff cannot demonstrate that he would not have been placed in segregation absent Defendants' retaliatory actions.  However, the cases cited by Defendants are not binding and I am guided by the Tenth Circuit's precedent in *Smith v. Maschner*.  There, a prisoner asserted that he was subjected to retaliation for his successful litigation against jail authorities.  The evidence of retaliation consisted of a

6

request for a second search of the plaintiff's briefcase before a court appearance when no such search had been conducted before, disciplinary proceedings from his refusal to comply with the search, sizable loss of good time credits despite a prior good record, suspicious transfers of other prisoner witnesses when they were needed for his litigation, and denial of access to his legal materials. Although any of these actions may have been permissible absent an intent to retaliate for protected activity, the Tenth Circuit concluded that plaintiff's evidence was sufficient to support an inference that "defendants took disciplinary action against [the plaintiff] based in part on improper motives." 899 F.2d at 949. The plaintiff still had the burden to prove at trial "that the actual motivating factor behind defendants' actions was retaliation for his prior or current litigation;" nonetheless, his evidence was sufficient to withstand summary judgment. *Id.* I conclude that the instruction from the Tenth Circuit is that where an inmate presents evidence that could establish that the adverse action was motivated at least <u>in part</u> by an improper motive, this is sufficient to create an issue of fact as to whether retaliatory animus was the "but for" cause of the decision.

In addition, the confidential materials submitted by Defendants do not dispel the possibility of a retaliatory motive. The event triggering Plaintiff's placement in segregation was the April 28, 2006 report from Edmonds relaying information allegedly obtained from a confidential informant. The remaining confidential documents all relate to earlier events, including an incident from 2003, reports from observed events and confidential informant statements in 2003, 2004 and March and September 2005 which peripherally or directly tie Plaintiff to STG and drug activity, intercepted correspondence from 2004, and a report of a positive urinalysis from March 2004. Plaintiff does not dispute that he had past

7

involvement with gang and drug activity but contends that he had stopped. It appears that BVCF had most of the information upon which it relied to classify Plaintiff for some time; however, it was not until Edmonds issued his report regarding the alleged "hit" that Plaintiff was put in segregation and reclassification proceedings commenced. Again, viewing the evidence in the light most favorable to Plaintiff, as I must, the fact that Edmonds' report led to Plaintiff's reclassification, in combination with his alleged animosity towards Plaintiff and alleged false report that Plaintiff had a positive urinalysis test, all are sufficient to permit a reasonable jury to find that Edmonds acted with a retaliatory motive.

In addition, McCormac stated in the Notice of Administrative Segregation that "in April 2006, this officer received confidential intelligence information that offender Quintana was selling marijuana at BVMC" and that a detailed report was contained in the STG file. My review of the confidential materials reveals no report evidencing Plaintiff's involvement in marijuana sales in April 2006. It may be that such information was presented in the segregation hearing but I do not have it in the record. I must draw all favorable inferences in favor of Plaintiff and, given the absence of evidence supporting McCormac's claim regarding Plaintiff's recent drug activity, I conclude that a reasonable jury could find that McCormac's allegation was unsupported and pretextual.

Defendants also object to Magistrate Judge Mix's analysis of which grievances are at issue here. No party submitted copies of Plaintiff's initial grievances concerning the medical department but there does not appear to be a dispute that they were filed (and denied). Magistrate Judge Mix did not consider the medical department grievances and concludes that Plaintiff can state a claim based on the grievances against Defendant Edmonds starting March 2006. Defendants argue that Plaintiff's entire theory is premised

on retaliation for the medical department grievance and, given that he cannot prove that either Defendant had knowledge of those complaints, he cannot prove retaliation. I see no error. I agree that Plaintiff's theory is that his earlier grievances led to harassing conduct by Edmonds, which led to more grievances, which ultimately led to the initiation of administrative segregation proceedings. Even if the earlier links are not established and Edmonds began harassing Plaintiff for reasons unrelated to the events of December 2005[3], Plaintiff's has submitted evidence showing that a short time after he began filing grievances against Edmonds, he was reclassified based on reports from Edmonds and McCormac. I agree with Magistrate Judge Mix that Plaintiff's claim can rest on the later-filed grievances.

I will address specifically the evidence supporting an inference of causation against Defendant McCormac, which is thin. Plaintiff offers no evidence that McCormac was aware of Plaintiff's grievances concerning the medical department or Defendant Edmonds until just before Plaintiff was placed in segregation. Indeed, Plaintiff does not mention McCormac until the Step 3 grievance, which occurred after Plaintiff was placed in segregation pending the hearing. Plaintiff avers in his verified prisoner complaint that on the day he was subjected to the second tobacco test in April 2006, he told Edmonds and McCormac the grievance he was going to file. His assertions otherwise are primarily that McCormac "covered" or "condoned" the actions of Edmonds, but he provides no facts to

---

[3]According to Plaintiff, when he questioned Edmonds about why Edmonds was making him take the urinalysis tests, Edmonds said it was because of Plaintiff's past history with gangs and drugs. Again, a reasonable jury could conclude that this was the real reason for the early acts of alleged harassment but it could also conclude that Plaintiff suffered retaliation because he complained about Edmonds' treatment of him.

9

support these conclusions.[4]  However, given that the only evidence of recent drug or STG activity by Plaintiff came from McCormac and Edmonds, that the claim by McCormac is not supported by evidence of a report from confidential informant, and that McCormac initiated the reclassification proceedings shortly after Plaintiff had filed grievances and complaints about the conduct of Edmonds (of which McCormac was aware), I conclude that Plaintiff has minimally met his burden on summary judgment.

　　　　2.　　Exhaustion

Plaintiff objects to Magistrate Judge Mix's recommendation that the equal protection claim and retaliation claim based on the administration of tobacco tests after Plaintiff's participation in religious practices be dismissed for failure to exhaust. I agree that Plaintiff's grievances regarding the alleged harassment by Edmonds cannot fairly be read to state a claim of violation of Plaintiff's equal protection rights.  This is particularly so since the tobacco tests that Plaintiff complains of occurred after his Step 1 grievance filed in March 2006.  In addition, Plaintiff testified in his deposition that he began filing a separate set of grievances regarding the tobacco test issue, but did not file a Step 2 or Step 3 grievance on the matter.  Accordingly, Magistrate Judge Mix concludes, and I agree, that Plaintiff did not exhaust his administrative remedies.  In his objection, Plaintiff asserts that his March 13, 2006 grievance was based in part on the fact that Edmonds had falsely reported to

---

[4] For example, according to Plaintiff, McCormac approved administration of the urinalysis tests; Plaintiff appears to argue that this means that McCormac thereby approved the retaliatory use of the tests.  I am not persuaded that these additional tests, even if they were unusual, amount to an adverse action.  Even if they were, Plaintiff again offers no facts to indicate that McCormac's approval was motivated by a desire to retaliate against Plaintiff for filing his grievances against the medical department or, later, against Edmonds.

Plaintiff's supervisor that Plaintiff had a positive tobacco test. This is not sufficient, however, to put the defendants on notice that Plaintiff claimed that he and others involved in Native American religious practices were being treated differently from other inmates without justification or that this treatment was retaliatory. Accordingly, Plaintiff's objections are overruled.

Accordingly, it is ordered:

1. The recommendation of Magistrate Judge Kristen L. Mix (doc no 112) is accepted.

2. Defendants' Motion for Summary Judgment (doc no 84) is granted in part and denied in part. Summary judgment shall enter in favor of Defendants and against Plaintiff on Plaintiff's equal protection claim. Plaintiff's retaliation claim remains pending.

DATED at Denver, Colorado, on August 12, 2008.

BY THE COURT:


s/ Walker D. Miller
United States District Judge